Irving ROGER, Plaintiff,

v.

LEHMAN BROTHERS KUHN LOEB,
INC., Defendant.

Civ. No. C–1–83–2012.

United States District Court,
S.D. Ohio, W.D.

Aug. 21, 1985.

James B. Helmer, Cincinnati, Ohio, for plaintiff.

Charles Koob, Simpson Thacher & Bartlett, New York City, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. no. 48) and Defendant's Cross Motion for Partial Summary Judgment (doc. no. 54) regarding Count III of the Amended Complaint (doc. no. 40).

These motions require a decision whether under Ohio's Blue Sky Law, O.R.C. § 1707 *et seq.* (1985), certain securities were exempt from registration requirements and, if so, whether Plaintiff must tender back these securities to Defendant in order to entitle Plaintiff to the right of recission.

## I. FACTS

The background facts in this matter are not disputed. In a series of transactions between September 26, 1980 and August 6, 1981 Defendant, Lehman Brothers Kuhn Loeb, Inc., (Lehman) sold Plaintiff, Irving Roger (Roger), 33,850 shares of Consolidated Cinola Mines, Ltd. (Cinola) from its own account. In a single transaction on October 20, 1980 Lehman, while acting as a participant in the underwriting group, sold Roger 3,000 shares of Brooks Fashion Stores, Inc. (Brooks). Neither the Cinola nor the Brooks shares were registered with the Ohio Division of Securities. However, in 1980 and 1981 Cinola was listed in Moody's *OTC Industrial Manual* (Moody's). The listings included *inter alia*, the names of Cinola's officers and directors, and balance sheets for each of the preceding three years, but omitted any profit and loss statements for the company. Brooks was likewise listed in Moody's in 1980 and 1981. Those listings included the names of Brooks's officers and directors, current balance sheets and current profit and loss statements.

Both the Cinola stock and the Brooks stock were kept in a margin account that Roger maintained with Lehman. On January 28, 1981, as advised by Lehman, Roger directed that the 3,000 Brooks shares be sold from his account. Lehman itself purchased those shares, crediting Roger's account with their value. On January 20, 1982 and on April 1, 1982 Lehman sold to itself all 33,850 shares of Cinola stock in Roger's account to satisfy a margin call. Thus, Roger does not now own any Brooks or Cinola stock. At the present time Cinola is still a viable company, but Brooks has since been merged into another company and, therefore, has ceased to exist as a separate entity.

## II. PARTIAL SUMMARY JUDGMENT

Roger contends that the sale of the Cinola and Brooks stock was not exempt from registration and that, therefore, Lehman violated O.R.C. § 1707.44 which prohibits the sale of unregistered nonexempt securities. Roger seeks rescission of these transactions pursuant to O.R.C. § 1707.43. In its Cross Motion for Partial Summary Judgment, Lehman contends that the transactions in Cinola and Brooks' stock were exempt under the "securities manual exemption" provision, O.R.C. § 1707.03(M)(3)(a). Furthermore, Lehman contends that Roger is not entitled to rescission under § 1707.43 because Roger no longer owns the Cinola or Brooks shares and cannot, therefore, tender them to the Defendant.

### A. Cinola Shares

In his Motion for Partial Summary Judgment Roger contends that Lehman violated

O.R.C. § 1707.44. O.R.C. § 1707.44 provides in part:

(C) No person shall knowingly and intentionally sell, cause to be sold, or offer for sale, any security which comes under any of the following descriptions:

(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description, coordination, or qualification, and is not the subject matter of a transaction that has been registered by description.

While it is undisputed that the Cinola shares were not registered, exempt from registration under O.R.C. § 1707.02, nor subject to one of the transactional exemptions in O.R.C. §§ 1707.04 and 1707.34, Lehman claims that the sale of Cinola shares was exempt under O.R.C. § 1707.03(M)(3)(a), the so-called "securities manual exemption". Section 1707.03(M)(3)(a) provides:

(M) A sale by a licensed dealer, acting either as principal or as an agent, of securities issued and outstanding before such sale, is exempt, unless such sale is one or more of the following:

(3) Securities which within one year were purchased outside this state or within one year were transported into this state, where such dealer has knowledge, or reasonable cause to believe, before the sale of such securities, that within one year they were purchased outside this state or within one year were transported into this state; but such a sale of securities is exempt if any of the following occur:

(a) A recognized securities manual contains the names of the issuer's officers and directors, a balance sheet of the issuer as of a date within eighteen months, and a profit and loss statement for either the fiscal year preceding that date or the most recent year of operations.

Lehman acknowledges that the transactions in Cinola stock fall under § 1707.03(M)(3). Lehman is a licensed dealer which sold issued and outstanding Cinola stock from its own account to Roger. In addition, Cinola is a Canadian corporation and Lehman had reason to know that the shares had been purchased within one year outside Ohio, or within one year had been transferred into Ohio. Therefore, the sale of Cinola stock was not exempt unless it fell under part (a), the securities manual exemption.

As already indicated, Cinola was listed in a recognized securities manual (Moody's) during the time in which the subject transactions took place. Section 1707.03(M)(3)(a) requires that a listing contain four specific items of information before a transaction in the issuer's securities is exempted. The Cinola listings did contain the first three required items, (1) the names of Cinola's officers, (2) the names of Cinola's directors, and (3) balance sheets from the preceding three years were included in each listing. Lehman admits that the listings did not include the fourth item required, profit and loss statements.

Lehman contends that in 1980 and 1981 Cinola was a mining company in its developmental stages and had no operating profits which would form the basis for a profit and loss statement. Further, Lehman argues § 1707.03(M)(3)(a) should be construed to mean that if a company has not realized any income from any of its operations, then it has no current operations within the meaning of the statute and the statute must be read to call for a profit and loss statement for the most recent year of operations *if any*. Thus, according to Lehman, Cinola's listing in Moody's complies with the requirements of Ohio's securities manual exemption. Alternatively, Lehman suggests that the information supplied in Cinola's listing comports with the spirit of the manual exemption and provides potential investors with sufficient financial data to make an informed decision in Cinola's stock.

The Court does not agree. O.R.C. § 1707.44(C)(1) prohibits the sale of unregistered non-exempt securities. The Supreme Court of Ohio has stated that the purpose behind § 1707.44(C)(1) "is to prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements designed to protect the public from its own stupidity, gullibility and avariciousness." *Bronaugh v. R & E Dredging Co.*, 16 Ohio St.2d 35, 40, 242 N.E.2d 572, 576 (1968). Moreover, the Ohio Securities Division itself in an Interpretive Opinion has directed that "the literal language [of § 1707.03(M)(3)(a) ] should be applied here in requiring a balance sheet no less than eighteen months old *and a profit and loss statement* for either a fiscal year or the most recent year of operations." CCH Blue Sky Law Reporter paragraph 45710, page 40608 (Ohio Securities Bulletin November, 1973) (emphasis supplied).

In light of the Ohio Supreme Court's pronouncement, we find that the securities manual exemption provisions of O.R.C. § 1707.03(M)(3)(a) must be read to afford the investor the greatest possible protection. A literal interpretation of the statute, as supported by the Ohio Securities Division, effectuates that purpose. Profit and loss statements must be included in the Moody's listing for the transactions to fall within the securities manual exemption. It is not enough, as Lehman contends, to say that there were no operating profits and therefore no profit and loss statement was required. It is not immediately apparent from Moody's listings that Cinola was in developmental stages only. That this information was available in the Annual Reports of Cinola is not relevant because the Annual Reports were not included in Moody's.

■ The burden of proving entitlement to an exemption under the Ohio securities laws is on the party claiming that exemption. *State v. Frost*, 57 Ohio St.2d 121, 387 N.E.2d 235 (1979). Lehman has failed to meet that burden. Therefore, we hold that the sale of Cinola stock by Lehman to Roger was not exempt under § 1707.-03(M)(3)(a) and was sold in violation of § 1707.44(C)(1).

**B. Brooks Stock**

■ Lehman also claims an exemption under § 1707.03(M)(3)(a) for the sale of 3000 shares of Brooks to Roger. However, securities sold by a dealer participating in an underwriting group are not eligible for the securities manual exemption. O.R.C. § 1707.03(M)(1) provides:

(M) A sale by a licensed dealer, acting either as principal or as agent, of securities issued and outstanding before such sale, is exempt, *unless such sale is one or more of the following:*

(1) Securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as an underwriter or other participant in the distribution of such securities by the issuer, whether such distribution is direct or through an underwriter, provided that where the issuer is such by reason of owning one-fourth or more of such securities, such dealer has knowledge of such fact or reasonable cause to believe such fact.

(Emphasis added.)

Because Lehman acted as an underwriter for Brooks shares, (Plaintiff's Exhibit II), the transaction between Lehman and Roger falls under part (1) of the statute and Lehman is precluded from claiming an exemption under any part of § 1707.03(M). *See* CCH Blue Sky Law Reporter paragraph 45710 page 40608 (Ohio Securities Bulletin November, 1973) (noting that if any of the circumstances described in parts (1), (2) and (3) exist, an exemption under (M) does not exist).

Therefore, because Lehman has failed to establish the availability of an exemption under O.R.C. § 1707.44(C)(1), the sale to Roger of 3000 shares of Brooks was executed in violation of O.R.C. § 1707.44(C)(1).

### C. The Remedy

Ohio law provides that the purchaser of unregistered securities sold in violation of § 1707.44(C)(1) may rescind the sale and recover the purchase price. O.R.C. § 1707.43; *Mazza v. Kozel*, 591 F.Supp. 432 (N.D.Ohio 1984); *Bronough v. R & E Dredging, supra.* Section 1707.43 provides in relevant part:

> Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aids the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

■ To recover under § 1707.43, Plaintiff must establish that there has been a sale of a security in violation of the securities chapter, and that the violation materially affects the protection contemplated by the violated provision. *Mazza v. Kozel, supra* at 435; *Martin v. Steubner*, 485 F.Supp. 88, 97 (S.D.Ohio 1979), *aff'd* 652 F.2d 652 (6th Cir.), *cert. den.* 454 U.S. 1148, 102 S.Ct. 1013, 71 L.Ed.2d 302 (1981).

■ As has already been established, Lehman sold Roger shares of Cinola and Brooks in violation of § 1707.44(C)(1). The Ohio Supreme Court has held that failure to comply with O.R.C. § 1707.44(C)(1) materially affects the protection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under O.R.C. § 1707.43. *Pencheff v. Adams*, 5 Ohio St.3d 153, 449 N.E.2d 1277 (1983); *Bronough v. R & E Dredging, supra.* Consequently, the transactions involving the sale of Cinola and Brooks stock to Roger are voidable at Roger's election. O.R.C. § 1707.43.

Lehman contends that Roger is precluded from obtaining relief under § 1707.43 because he is unable to tender the Cinola and Brooks shares to Lehman as called for in the statute. As already noted, Roger no longer owns the Cinola or Brooks stock because Lehman bought these shares back from Roger prior to this action. Moreover, since Brooks no longer exists as a separate entity, Roger is precluded from purchasing substitute shares in order to meet the tender provision.

■ Absent a definitive ruling by the state high court on a specific question of state law, a federal district court applying state law must exercise the court's best judgment as to how the state high court would hold if confronted with the facts in question. *Bagwell v. Canal Insurance Co.*, 663 F.2d 710 (6th Cir.1981).

The Ohio Supreme Court has not yet addressed the specific issue of whether tender is required under § 1707.43 where the purchaser no longer owns the securities in question, having resold them to the seller prior to suit. However, the Ohio Supreme Court has consistently held in favor of the investor to promote the remedial intent behind Chapter 1707. *See, e.g., Bronough v. R & E Dredging Co., supra.* "Any contrary determination would undermine the most fundamental purpose of the statute—protection of the public from the sale of unregistered securities." *Pencheff v. Adams, supra*, 5 Ohio St.3d at 154, 449 N.E.2d at 1278.

"The [Ohio] Securities Act is remedial in nature and should be interpreted to provide the protection it is intended to give." *Miller v. Griffith*, 196 N.E.2d 154, 156 (Colum. Cty.Common Pleas 1961). O.R.C. § 1707.-43 has been interpreted to protect both the buyer and the seller—by permitting "the purchaser to rescind the transaction, it *puts the parties in the position they were in before the contract was entered into.*" *Martin v. Steubner, supra* at 101 (emphasis added). An Ohio appeals court in *Crane v. Courtright*, 2 Ohio App.2d 125,

206 N.E.2d 913 (1964), ruling in favor of the investor, refused to require tender to the individual seller as a condition precedent to suit, but instead, accepted tender in open court. In so holding, the *Crane* court recognized: "the purpose of tender before suit is to insure restitution to the defendant. It is *merely one means of affording such protection* to the defendant." *Id.* at 128, 206 N.E.2d at 915 (emphasis added).

Lehman argues that the *Crane* decision requires a tender, in any event, of the original shares. Since the plaintiff in *Crane* still possessed the original shares, the issue of tender in the event that the original shares were unavailable was not addressed. It is significant, however, that the *Crane* court construed the statute liberally to rule in favor of the injured investor. *Id.* Further, though § 1707.43 is not punitive in nature, *Martin, supra* at 101, it is meant to create "an additional strong incentive for securities sellers to comply with the registration laws." *Bell v. Le-Ge, Inc.*, Slip Opinion No. 48497 January 24, 1985 (8th Dist.Ohio Ct.App.).

■ Consistent with the purposes of § 1707.43 stated in *Martin, Crane,* and *Bell,* we hold that formal tender of the Cinola and Brooks shares at this time is not a prerequisite to rescission under § 1707.-43. The parties can be restored to the positions they were in before the transactions took place by other means. Lehman has already received the securities back from Roger and has paid Roger the value of the shares at the time it repurchased them. All that remains to effectuate the purpose of the statute is for Lehman to pay Roger the difference between the original sale price of the stock paid by Roger to Lehman, and the price for which Lehman subsequently repurchased the stock from Roger.

### D. Procedural Defects

■ Lehman also contends that Roger has waived his claims with respect to the trades in Brooks stock by virtue of a statement made by Plaintiff's counsel at a deposition of Roger. (*See* Defendant's Exhibit 3). Lehman claims that Roger's counsel limited the complaint by stipulation to shares of E.R.G., Cinola, and Pharmacare.

This objection is not well-taken for several reasons. First, the subject deposition was taken before Roger was aware of violations in the Brooks transaction; second, Roger subsequently amended his complaint and provided supplemental answers to Lehman's interrogatories indicating that it also considered the sale of Brooks shares to be in violation of Ohio's Blue Sky Laws; third, Counsel's response in the deposition was specifically limited in time; and fourth, Lehman has not been prejudiced in its ability to prepare its case in respect to the Brooks claims. Lehman has had ample time to conduct discovery on these claims. The purpose of Rule 15, Fed.R.Civ.P. for amended and supplemental pleadings is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. *McHenry v. Ford Motor Co.*, 269 F.2d 18 (6th Cir.1959). Therefore, the Court holds that Roger has not waived his right to pursue his claims regarding transactions in Brooks stock.

### III. CONCLUSION

For the reasons stated above, Defendant Lehman's sale of 3000 shares of Brooks and 33,850 shares of Cinola to Roger violated O.R.C. § 1707.44(C)(1). Because of this violation, Roger is entitled to rescind these transactions and be restored to his original position. To accomplish this purpose formal tender of the subject shares is not necessary. Lehman is directed to pay Roger the difference between the original price of the stock bought by Roger and the price for which Lehman subsequently repurchased the shares.

In addition, the procedural objection asserted by Lehman is not well taken and Roger is not barred from pursuing his claims regarding the transactions in Brooks stock.

IT IS SO ORDERED.