SORENSON et al., Appellees,

v.

TENUTA, Appellant; Essco Energy Corporation et al., Appellees.

[Cite as *Sorenson v. Tenuta* (1989), 62 Ohio App.3d 696.]

Court of Appeals of Ohio,
Franklin County.

88AP–395.

Decided May 2, 1989.

*Emens, Hurd, Kegler & Ritter, John P. Brody* and *Gene W. Holliker,* for appellees.

*Luigia Tenuta,* for appellant.

McCORMAC, Presiding Judge.

· Defendant-appellant, Eugene P. Tenuta, appeals the judgment of the Franklin County Court of Common Pleas, holding that he had violated provisions of R.C. Chapter 1707 by selling unregistered securities to plaintiffs-appellees, Kenneth C. and Charlene P. Sorenson. Pursuant to R.C. 1707.43, the trial court granted appellees' request to rescind the securities transaction and, noting that appellees had tendered the securities to appellant, the court awarded appellees judgment against appellant for $18,173, plus interest from March 15, 1984, the date that the sale was completed.

Appellant asserts the following assignments of error:

"I. Appellees failed to prove that the transaction complained of was a security under the statute.

"II. Appellees failed to prove the necessity of Defendant's status as a licensed dealer.

"III. Recovery is barred by the Statute of Limitations.

"IV. The violation complained of does not materially affect the protection contemplated by the Statute.

"V. Defendant–Appellant's nominal participation and lack of compensation, therefor [sic] precludes recovery from him.

"VI. The Trial Court erred with respect to the amount of damages and the prejudgment interest assessed."

The litigation was based upon a written agreement creating a limited partnership whose stated intention was "to drill and complete production wells, on the oil and gas lease(s) with the funds paid by participant and the capital equipment and other tangible costs provided by operator." The agreement was dated December 21, 1983, and identified the parties as Cumberland Energy Partners, Ltd., referred to as the operator and driller, and Kenneth C. and Charlene P. Sorenson, referred to as the participants. Eugene Tenuta signed for Cumberland Energy Partners, Ltd. Under his signature, he wrote "V.P. Marketing Essco Energy Corp."

Appellee Kenneth Sorenson testified that Barry Kessler, Sorenson's accountant and tax planner, had recommended that he consider investing in a limited partnership. Kessler introduced Sorenson to Tenuta in Kessler's office. Sorenson signed the limited partnership agreement at his home in March 1984. Tenuta was the only person from either Cumberland Energy Partners or Essco Energy Corporation with whom Sorenson met regarding the disputed transaction. Sorenson had no reason to believe that Tenuta had not been properly licensed or that the securities were not registered until

February 1986 when his attorney told him. Sorenson had made other investments in the past upon the advice of other persons.

Tenuta testified that, when Kessler introduced Sorenson to him, he was helping place people in a project known as Cumberland Energy Partners. Tenuta was not an owner or a director, he did not put the package together, he did not directly solicit clients, and he received no form of compensation for his participation. He did concede that he hoped to reap future benefits as a result of this sales activity. Tenuta acknowledged that he was an officer, but only in name. Tenuta did "interact" with clients through Kessler. Tenuta placed five to six limited partnerships in Cumberland. While he signed the agreement on behalf of Cumberland as a "sales representative," he intended to bind Cumberland—not himself.

In his first assignment of error, appellant contends that appellees failed to prove that the transaction complained of was a security under the applicable statute. R.C. 1707.01(B) defines "security":

"(B) 'Security' means any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas, or mining leases, or certificates or written instruments of any interest in or under the same, receipts evidencing preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, certificates evidencing an interest in any trust or pretended trust, any investment contract, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but such sections shall not apply to bond investment companies or to the sale of real estate."

R.C. 1707.01(D) states that "person" includes a limited partnership.

■ Appellee testified that appellant indicated to him that the document which he signed was an operation agreement for a limited partnership that would operate a drilling operation of oil and gas leases.

According to the contract, which was introduced as evidence at trial, appellee was a "participant" and, therefore, an "owner, other than the

operator, of a portion of the working interest in the property." The contract defined "property" as the well sites. The contract defined "working interest" as "100% of 80% of all production of oil from each well produced hereunder."

Cumberland, as the operator, stated its intention to provide well sites and to assign the percentage of the working interest. The operator and the participant also stated their intention "to create a profitable long-lived oil production venture, and to insure to each participant a fair and equitable share of the production of oil * * *."

The language of the contract indicates that Sorenson, a participant, owned an interest in the assets or property of the limited partnership which is included in the definition of a "person." Also, R.C. 1707.01(B) states that a security includes a written instrument in an oil or gas lease. The agreement entered into by Sorenson and Cumberland represents a written instrument in an oil and gas lease.

Appellees did establish that the transaction involved a security under R.C. 1707.01(B).

Appellant's first assignment of error is overruled.

■ Appellant's second assignment of error asserts that appellees failed to prove that appellant's unlicensed status rendered the transaction voidable.

Appellant does not contest the fact that he was not a licensed dealer at the time of the contested transaction. Appellant seeks to avoid the requirement of a license by asserting that he was a nominal participant in the transaction, that he was not compensated, and that he acted in the capacity of an attesting and administrative clerk. Appellant then concludes that he falls under the exceptions contained in R.C. 1707.14, but he does not point to any specific provision that is applicable.

R.C. 1707.14(B) provides that no person can sell securities, or "engage in the business of buying, selling, or dealing in securities" unless the person is a licensed dealer or he acts through or with a licensed dealer. The provision provides exceptions to the rule, but none applies to the facts of this case.

R.C. 1707.01(C)(1) defines "sale" to include " * * * every disposition, or attempt to dispose, of a security or of an interest in a security. 'Sale' also includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale * * *."

R.C. 1707.01(C)(2) defines "sell" as "*any act* by which a sale is made." (Emphasis added.)

R.C. 1707.43 provides that a sale made in violation of R.C. Chapter 1707 is voidable.

Appellant violated R.C. 1707.14(B), thus rendering the sale voidable pursuant to R.C. 1707.43. The interest in the oil and gas lease was sold to appellees. Appellant was the only person to sign the sale agreement for Cumberland and Essco. He was the only representative of these entities with whom appellees discussed the deal. Thus, based on the broad definition of "sell," appellant did sell the oil and gas lease to appellees when he was not licensed to sell securities.

There is no provision in R.C. 1707.14 which exempts appellant from being licensed. Whether appellant received compensation from the sale does not alter the fact that he sold a security while unlicensed.

Appellant's second assignment of error is overruled.

■ In his third assignment of error, appellant asserts that the statute of limitations bars recovery. R.C. 1707.43 sets forth the applicable statute of limitations:

"No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."

Appellant contends that, because appellee was a retired lieutenant colonel from the United States Air Force who had "significant investment experience," he should have known or had reason to know that the securities were not registered or that appellant was not licensed.

Whether appellee knew or had reason to know that the securities were not registered, or that appellant was not a licensed dealer before February 1986 when his attorney so informed him, was a question of fact for the trial court. That appellee is a retired lieutenant colonel from the United States Air Force, or that he had made investments in the past upon the advice of investment advisors, does not constitute a factual background which would show as a matter of law that appellee knew that the securities were not properly registered or that appellant was unlicensed. There was no indication that appellee was aware of the illegality of the transaction until informed of it by his attorney. The record fully supports the trial court's finding that appellee did not know or have reason to know about the violation until his attorney informed him of it.

■ As we have held, "[i]n the absence of a factual background which shows that a shareholder knew that shares of stock were not properly

registered or exempted, the two-year statute of limitations provided in R.C. 1707.43 begins to run upon the *actual* discovery of the defect. * * * " (Emphasis added.) *Eastman v. Benchmark Minerals, Inc.* (1986), 34 Ohio App.3d 255, 258, 518 N.E.2d 23, 25. Thus, the trial court did not err in holding that the two-year statute of limitations began running in February 1986 when appellee's attorney informed him of the R.C. Chapter 1707 violations.

Appellant's third assignment of error is overruled.

■ In his fourth assignment of error, appellant argues that the sale at issue was not voidable because the violation did not materially affect the protection which R.C. 1707.43 contemplates.

The trial court properly found that appellant committed a violation described in R.C. 1707.44(C)(1) by selling unregistered securities that were not exempt since the limited partnership interest, a security, was not registered in Ohio or exempt from registration.

The Ohio Supreme Court has held that:

"Failure to comply with R.C. 1707.44(C)(1) materially affects the protection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under R.C. 1707.43." *Pencheff v. Adams* (1983), 5 Ohio St.3d 153, 5 OBR 318, 449 N.E.2d 1277, syllabus.

The court in *Pencheff* further pointed out this result pertains as a matter of law so as not to undermine the purpose of the statute which is to protect the public from the sale of unregistered securities.

Because this court has found that appellant violated R.C. 1707.44(C)(1), the sale is voidable under R.C. 1707.43. Additionally, the public also needs to be protected from the sale of securities, registered or unregistered by an unlicensed seller. The purpose of requiring a license is also to protect the public.

Appellant's fourth assignment of error is overruled.

■ In his fifth assignment of error, appellant asserts that, because he was a nominal participant and received no actual compensation, he qualifies for the protection of R.C. 1707.431(B). A person who qualifies for the protection of this provision is treated as not having participated in a sale of a security. This provision became effective in April 1985, after the events of the present case had transpired. Even if that provision were applicable to the facts of this case, which is doubtful since appellant conceded that he was motivated by the interest in future advantages, the principle of retroactivity prevents application of the exemption to this transaction. Absent language in a statute that its application is retroactive, a statute's application is automatically prospective. R.C. 1.48. A prospective statute applies only to claims which arise after its enactment. In this case, Sorenson had a cause of action once

the securities were sold to him in 1984. Moreover, it would be unconstitutional to apply the provision to this claim as it would affect substantive rights that had already accrued.

R.C. 1707.43 provided, without exception, at the time of sale that:

"* * * *[E]very* person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction * * *." (Emphasis added.)

The use of "every person" provides no exceptions for a person who has not received any compensation for his participation. While R.C. 1707.431 later provides exemptions, which may or may not have been applicable herein, it did not apply at the time of the present transaction and cannot be used.

Appellant's fifth assignment of error is overruled.

◼ In his final assignment of error, appellant contends that the trial court erred with respect to the amount of damages awarded and the prejudgment interest assessed against appellant. R.C. 1707.43 provides that the purchaser, upon tender to the seller of the securities, may recover the full amount paid by the purchaser jointly and severally from all persons who participated in the sale. The trial court properly found that appellee was entitled to recover the $18,173 that he had actually paid for the securities. The fact that appellee may have deducted losses on prior income tax returns or claimed various shelters is a matter between appellee and the Internal Revenue Service and does not inure to appellant's advantage.

R.C. 1343.03(A) provides that, when money becomes due and payable upon an instrument of writing or verbal contract, the creditor is entitled to ten percent per annum interest unless the instrument provides for a different rate of interest. (There are also provisions in R.C. 1343.03 for prejudgment applying to failure to make a good faith effort to settle a tort claim which are inapplicable herein.)

Two questions are presented: the first is whether the statutory rescission and recovery of the purchase price constitutes money due and payable under the sales agreement or whether it is another form of damages. If it is the latter, R.C. 1343.03(A) is inapplicable and prejudgment interest does not apply.

◼ We find that the rescission and recovery of purchase price under R.C. 1707.43 is a statutory right derived from the illegality of the transaction rather than a recovery applicable from the face of transaction. Thus, prejudgment interest is not applicable and interest applies only from the date of the judgment. R.C. 1343.03(B).

The court properly awarded appellee recovery against appellant in the amount of $18,173 which he paid for the securities, which transaction was ordered rescinded. The court erred in allowing prejudgment interest. Interest is applicable only from the date of the judgment.

Appellant's assignments of error one, two, three, four, and five are overruled. Appellant's sixth assignment of error is partly overruled and partly sustained. The judgment is affirmed, except the allowance of prejudgment interest. The case is remanded to the trial court to amend the judgment entry accordingly.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WHITESIDE and BRYANT, JJ., concur.